# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **COPPERHEAD INDUSTRIAL, Inc.,** | |
| Plaintiff/Counter Defendant, | |
| v. | Case No.: 1:18-cv-01228-ACA |
| **CHANGER & DRESSER, Inc.** | |
| Defendant/Counter Claimant. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff Copperhead Industrial, Inc.'s ("Copperhead") motion for leave to file a sixth amended complaint to rejoin JEC Distributors, Inc. ("JEC") as a party plaintiff. (Doc. 149).

Defendant Changer & Dresser ("C&D") opposes amendment, arguing that amendment would be futile because the proposed allegations do not establish that JEC has standing; that Copperhead unduly delayed requesting leave to amend; and that Copperhead's proposed amendment is prejudicial. (Doc. 162).

As explained below, amendment would be futile. Therefore, the court **DENIES** Copperhead's motion to amend.

## I. RELEVANT PROCEDURAL HISTORY

Copperhead and JEC filed this patent infringement action in January 2015. (Doc. 1). Between February 2015 and November 2017, Copperhead and JEC filed

1

five amended complaints, all before this case was transferred to this district from the Western District of New York. (Docs. 5, 12, 27-1, 54, 100). In each of the six complaints, Copperhead and JEC alleged that JEC was the "non-exclusive" licensee of the patents-in-suit. (Doc. 1 at ¶ 15; Doc. 5 at ¶ 15; Doc. 12 at ¶ 16; Doc. 27-1 at ¶ 19; Doc. 54 at ¶ 18; Doc. 100 at ¶ 24).

In January 2019, the court dismissed JEC's claims without prejudice for lack of standing because the fifth amended (and operative) complaint did not allege that JEC was an exclusive licensee, or facts from which the court could make such an inference. (Doc. 139 at 15–16).

Eight months later, Copperhead filed a motion for leave to amend to rejoin JEC as a party plaintiff. (Doc. 149). Copperhead supports it motion with a declaration from Joseph Ruggerio, dated August 15, 2019. (Doc. 149-2). In his declaration, Mr. Ruggerio states that he is the sole owner, director, and president of both Copperhead and JEC. (Doc. 149-2 at ¶¶ 2–3). According to Mr. Ruggerio, the two companies share the same physical location and other resources, including office supplies and labor. (Doc. 149-2 at ¶ 4). Copperhead distributes automotive manufacturing products, including spot welding cap changers. (Doc. 149-2 at ¶ 5). Copperhead owns the patents-in-suit, which relate to its cap changers. (*Id.*). JEC distributes Copperhead's cap changers that make use of the patents-in-suit. (Doc.

2

149-2 at ¶ 6). Copperhead profits from each cap changer that JEC sells. (Doc. 149-2 at ¶ 8).

According to Mr. Ruggerio, as owner of both Copperhead and JEC, he formed an unwritten licensing agreement pursuant to which JEC licenses from Copperhead the patents-in-suit. (Doc. 149-2 at ¶ 7). JEC has licensed the patents-in-suit continuously since 2013. (Doc. 149-2 at ¶ 9). Mr. Ruggerio states that it has always been his "intention to grant to JEC, on behalf of Copperhead, all rights needed to make, use and sell the patented spot welding cap changers in the United States, to control prosecution of the patents-in-suit, and to control the enforcement of the patents-in-suit, while reserving Copperhead's patent ownership." (Doc. 149-2 at ¶ 9). Mr. Ruggerio also states that JEC has always been Copperhead's "sole licensee for all of the patents-in-suit," and "no other party has been authorized to practice the patents-in-suit, and no other party has ever enforced or been authorized to enforce the patents-in-suit." (Doc. 149-2 at ¶ 10).

In 2014, Mr. Ruggerio, as President of JEC, communicated with C&D relating to C&D's alleged infringement of the patents-in-suit. (Doc. 149-2 at ¶ 11). And JEC, on behalf of Copperhead, negotiated a potential license arrangement with C&D. (Doc. 149-2 at ¶ 12). Although no agreement was reached, Mr. Ruggerio claims that JEC's negotiations "evidence its broad rights to the patents-

in-suit and demonstrate its extremely close relationship with Copperhead." (Doc. 149-2 at ¶ 12).

Based on Mr. Ruggerio's declaration, Copperhead wishes to remove from the complaint the reference to JEC as a "non-exclusive" licensee and more fully describe the licensing relationship between Copperhead and JEC through the following six specific allegations:

- The licensing agreement between the parties was not in writing;

- A single person, Mr. Ruggerio, owns, controls and is President of both companies, and the relationship between Copperhead and JEC is an extremely close one;

- Copperhead profits from each sale of a cap changer made by JEC;

- JEC is the only party authorized to practice the patented invention in the United States, and has always been the sole licensee of the patents-in-suit:

- JEC controls prosecution and enforcements of the patents-in-suit; and

- Copperhead intended to grant JEC all rights needed to make, use, and sell the patented products in the United States.

(Doc. 149 at 10–11).

## II.  ANALYSIS

Federal Rule of Civil Procedure 15 requires the court to "freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A court may consider several factors when deciding whether to grant a motion to

4

amend, including undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (quotation marks omitted) (alterations in original).[1]

C&D argues that the court should deny Copperhead's motion for leave to amend because the proposed sixth amended complaint fails to allege facts demonstrating that JEC is an exclusive licensee with standing to sue, and therefore, amendment is futile.[2] The court agrees.

"[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quotation marks omitted). Copperhead's proposed amended complaint fails to allege facts showing that JEC has standing. Therefore,

---

[1] The deadline to amend pleadings or join parties was April 26, 2016. (Doc. 40). If a party seeks to amend its pleading after the deadline established in the scheduling order, the party generally must show "good cause" and receive the court's consent. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed. R. Civ. P. 16(b)."). C&D has not argued that Copperhead must show "good cause" under Rule 16(b). C&D limits its arguments in response to Copperhead's motion to the Rule 15 factors. Therefore, the court addresses the propriety of amendment under Rule 15 only.

[2] C&D also contends that the proposed amendment is unduly delayed and prejudicial. Because the court finds that Copperhead's proposed amendment complaint is futile, the court does not consider C&D's second and third arguments in opposition to amendment.

the amended complaint would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(1). *See Stalley v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (quotations omitted).

"There are three general categories of plaintiffs when analyzing constitutional standing in patent infringement suits: (1) plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights; (2) plaintiffs that hold exclusionary rights created by the patent statutes (but not all substantial rights to the patent), often identified as exclusive licensees; and (3) plaintiffs that hold less than all substantial rights to the patent and lack exclusionary rights." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). The first two categories of plaintiffs "possess 'exclusionary rights' in a patent[, and] suffer an injury when their rights are infringed," and therefore have Article III standing. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). Plaintiffs in the third category—often called non-exclusive licensees—lack constitutional standing to bring suit "or even to join a suit with the patentee." *Morrow*, 499. F.3d at 1341.

Copperhead's proposed amended complaint does not allege that JEC holds all legal rights to the patents-in-suit. Therefore, the question is whether the

proposed complaint sufficiently alleges that JEC is an exclusive licensee for purposes of standing. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury.").

"To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010) (quotations omitted), *abrogated on other grounds by Halo Electrs. Inc. v. Pulse Electrs., Inc.*, 136 S. Ct. 1923 (2016). "If the party has not received an express or implied promise of exclusivity under the patent, *i.e.*, the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). "The grant of a bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others." *Id.* at 1553.

As stated above, *see supra* p. 4, Copperhead seeks to add six allegations to its complaint, but none of these allegations, individually or collectively, establish that JEC has standing.

As an initial matter, whether the license agreement was in writing is inapposite because "a license may be written, verbal, or implied." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998).

Next, the allegations concerning Mr. Ruggerio's common ownership and control of Copperhead and JEC, the "extremely close" relationship between the two entities, and Copperhead's profit from JEC's sale of the patented product also are beside the point. The Federal Circuit has rejected the notion that a close association between two entities is, by itself, sufficient to confer standing. *Spine Sols.*, 620 F.3d at 1318. Otherwise, "any company related to a patent owner could be treated as an exclusive licensee, so long as the patent owner allows only that company to practice the patent, regardless of any actual agreement as to exclusivity," which "is plainly contrary to [Federal Circuit] case law." *Id.*[3]

Copperhead is left then with the proposed allegations that JEC is the only party authorized to practice the patented invention; that JEC controls prosecution and enforcements of the patents-in-suit; and that Copperhead intended to grant to

---

[3] The court is not persuaded by the non-binding authority that Copperhead cites for the proposition that an entity closely affiliated with a patent owner is an exclusive licensee merely by virtue of the relationship or understanding between the companies. (*See* Doc. 149 at 11–12).

JEC all rights needed to make, sue, and sell the patented products in the United States. But these proposed facts fall short because they do not demonstrate that Copperhead "would be prohibited from licensing the [patents-in-suit] to a third party, should it so desire." *Spine Sols.*, 620 F.3d at 1318. And the record shows that Copperhead has attempted to do just that.[4]

In 2014, Copperhead offered C&D a license to the patents-in-suit and sent C&D a draft license agreement. (Doc. 149-2 at ¶ 12; Sealed Doc. 153-7). ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████ ████████████[6] Copperhead responds that "JEC was involved in—and in fact, was the party that actually made—the license offer."

---

[4] In arguing that Copperhead's proposed amended complaint is futile, C&D mounts a factual attack to subject matter jurisdiction under Rule 12(b)(1). (Doc. 162 at 22–26). Therefore, the court can "consider extrinsic evidence such as deposition testimony and affidavits," and is "free to weigh the facts" without viewing them in the light most favorable to the plaintiff. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (quotation marks omitted).

[5] ████████ The court has found that "002152706 Ontario Ltd." is "uniquely" Copperhead and allowed substitution of Copperhead for 002152706 Ontario Ltd. as a party plaintiff.

[6] The existence of the proposed licensing agreement is not a secret. But the court has redacted this portion of the opinion because it contains details about specific terms of the proposed licensing agreement that Copperhead has designated as either "Confidential" or "Confidential—Attorneys' Eyes Only." (*See* Doc. 151). The court will provide an unredacted copy of this opinion to counsel for the parties.

9

(Doc. 158 at 6) (citing Sealed Doc. 153-7). The email to which Mr. Ruggerio attached the draft licensing agreement confirms that he made the license offer in his capacity as a representative of JEC Distributors. (Sealed Doc. 153-7 at 2). This may, as Copperhead suggests, "show that no license agreement would have been made but for JEC's involvement" and support Copperhead's proposed allegation that JEC controls the prosecution and enforcement of the patents-in-suit. (*See* Doc. 158 at 6). But the fact remains that the proposed licensing agreement affirmatively shows that Copperhead retained the ability to license the patents-in-suit to a third party, including C&D. And none of Copperhead's proposed allegations change that fact. Thus, JEC lacks standing. *See WiAV*, 1266. ("An exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it.").

The 2014 proposed licensing agreement is not the only evidence in the record suggesting that JEC is not an exclusive licensee. In his February 2018 deposition in this action, Mr. Ruggerio testified that JEC is a non-exclusive licensee:

> Q. … Is it correct that JEC licenses the patents that are involved in this case from Copperhead?
>
> A. Yes.
>
> Q. And is it correct that JEC is a nonexclusive licensee of those patents?

>    A.   I think we're exclusive, if I have to say, because we're the only company selling that.
>
>    Q.   Copperhead.
>
>    A.   The Copperhead brand.
>
>    Q.   I'm sorry.
>
>    A.   No, you're right. We're nonexclusive, JEC.
>
>    Q.   Does Copperhead license the patents to anyone besides JEC?
>
>    A.   No. You need to rephrase that again, sorry. I'm getting confused.

(Doc. 162-3 at 3).

Copperhead submits that this testimony is not determinative of the instant motion because the transcript suggests that Mr. Ruggerio was confused by the line of questioning. (Doc. 158 at 12). The court is not convinced. Mr. Ruggerio stated that he was "getting confused" in response to a follow-up question after testifying that JEC was a non-exclusive licensee. Copperhead claims that even if the court accepts as unequivocal Mr. Ruggerio's testimony that JEC is a non-exclusive licensee, this label would not resolve the issue either because the court must examine the substance of the allegations in the proposed amended complaint. (Doc. 158 at 12–13). However, as explained above, the substance of the proposed amended allegations does not establish that JEC has standing.

Notably, the proposed amended complaint stops short of alleging that JEC is the "exclusive licensee" of the patents-in-suit. The court understands that standing "does not depend on labels," and the "substance of the allegations" controls. *Lone Star*, 925 F.3d at 1234. But if JEC were in fact the exclusive licensee, the court wonders why Mr. Ruggerio's sworn declaration would not simply state as much. The court can only surmise that Copperhead's decision to call JEC the "sole licensee" as opposed to the "exclusive licensee" is a conscious choice given the undisputed evidence in the record, including Copperhead's proposal to license the patents to C&D and Mr. Ruggerio's deposition testimony.

### III. CONCLUSION

For the reasons stated above, the court finds that amendment of the complaint would be futile because the proposed amended complaint does not establish that JEC has standing. Therefore, the court **DENIES** Copperhead's motion for leave to file a sixth amended complaint.

**DONE** and **ORDERED** this December 19, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE